UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DONNA ARENSDORF, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-06-3324 |
| § | |
| HENRY M. PAULSON, SECRETARY § | |
| OF THE TREASURY, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

Before the Court are Defendant's Motion for Summary Judgment on Discrimination Claims (Doc. No. 8), Motion for Summary Judgment on Non-Discrimination Claims (Doc. No. 9), and Motion to Dismiss (Doc. No. 10). After considering the parties' filings and the applicable law, the Court finds that Defendant's Motion for Summary Judgment on Discrimination Claims and Motion for Summary Judgment on Non-Discrimination Claims should be granted. Defendant's Motion to Dismiss should be denied as moot.

**I.   BACKGROUND**

   **A.   Plaintiff's Employment History**

Plaintiff was employed as a revenue officer for the Internal Revenue Service from October 15, 1985, until August 26, 2005, ultimately reaching the GS-11 classification. From May 2002 to August 2005, James ("Al") Gibson directly supervised Plaintiff's work. On November 19, 2003, Gibson gave Plaintiff a mid-year progress review indicating that she had an overall "unacceptable" performance.

As a result of her failing performance, Gibson recommended that Plaintiff remove herself from the so-called Flexi-place program. Removal from Flexi-place indicates that an employee might need additional guidance available in the office. (Doc No. 8., Ex. 15.) On February 2, 2004,

and June 3, 2004, Gibson issued two Case Review Narratives indicating that Plaintiff was failing in a number of performance areas. (Doc No. 8., Ex. 16; Ex. 17.) On June 3, 2004, Gibson gave Plaintiff an "unacceptable" rating in her Annual Performance Appraisal. (Doc. No. 8, Ex. 21.)

On August 31, 2004, Gibson gave Plaintiff an "Opportunity Letter" explaining that she had ninety days to improve her performance or she would face termination. (Doc. No. 8, Ex. 23.) The IRS terms this interval the "Performance Improvement Period" or "PIP." The Opportunity Letter identified specific instances of Plaintiff's shortcomings by listing missed deadlines and omissions in her case files. It also provided the IRS's accepted standards for performing certain tasks by referring to the Internal Revenue Manual's guidelines. Finally, the letter described the resources Plaintiff could use to improve her performance during the PIP.

The day after she received the Opportunity Letter, Plaintiff began a six-month sick leave that lasted until March 1, 2005. When the Plaintiff returned to work, Gibson immediately reissued the Opportunity Letter, giving Plaintiff an additional ninety days to improve her performance. (Doc. No. 8, Ex. 24; Ex. 25.) During the PIP, Plaintiff was given an On the Job Instructor ("OJI"), Sue Burton, who could assist her in managing her cases. Gibson, and at times his superior, Martin Arnold, reviewed the Plaintiff's cases on a bi-weekly basis during this period.

Following the end of the PIP, Arnold informed the Plaintiff that he was proposing her removal. (Doc. No. 8, Ex. 26.) Ellen Dolby, the Area Manager, approved his proposal, and on August 26, 2005, Plaintiff was terminated. (Doc. No. 8, Ex. 27.)

**B. Plaintiff's EEOC and TIGTA Activity**

Plaintiff filed a number of grievances throughout her career at the IRS and while she was working for Gibson. In particular, she filed Equal Employment Opportunity ("EEO") complaints on July 14, 2004 and September 24, 2004. (Doc. No. 8, Ex. 1; Ex. 2.) Both complaints alleged that she suffered from a hostile work environment, based on her race and sex, because her transfer

2

request was denied. She alleged that both Gibson and Arnold took part in the discriminatory treatment.

Plaintiff also filed grievances with the Treasury Inspector General for Tax Administration ("TIGTA") while she was working for Gibson. (Doc. No. 8, Ex. 28; Ex. 29.) On August 3, 2004, she reported that a co-worker was inflating his travel vouchers. *Id.* That same day, she filed another referral claiming that Arnold and Gibson harassed her and gave her poor evaluations on the basis of her EEO complaints against them. (Doc. No. 8, Ex. 30.) On October 3, 2004, Plaintiff filed her final TIGTA grievance, alleging that her manager was retaliating against her for her recent EEO complaints. (Doc. No. 8, Ex. 33.)

### C. Procedural History

Plaintiff appealed her removal to the Merit Systems Protection Board ("MSPB"). The MSPB sustained her removal in its Initial Decision. (Doc. No. 8, Ex. 10.) Plaintiff then appealed the Initial Decision to the Full Board. The Full Board sustained the Initial Decision and issued a Final Decision. *Id.* Plaintiff appealed to this Court.[1] Defendants moved for summary judgment on Plaintiff's discrimination and non-discrimination claims and moved to dismiss Plaintiff's tort law claims.

### II.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[1] In July 2005, Plaintiff filed Complaint H-05-cv-2622 in the Southern District of Texas, complaining of a hostile work environment. In that matter, the trial court granted Defendant's request for summary judgment. Plaintiff's appeal of that decision is pending before the Fifth Circuit of Appeals.

3

judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Crawford*, 234 F.3d at 902. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 130, 150-51 (2000) (quoting *Anderson*, 477 U.S. at 250-51).

### III.   PLAINTIFF'S DISCRIMINATION CLAIMS

#### A. Sex Discrimination Claim

Plaintiff claims that she was discriminated against on the basis of sex in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e-2000e-17. "Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin." *Grimes v. Texas Dep't of Mental Health*, 102 F.3d 137, 140 (5th Cir. 1996). Title VII claims are subject to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To satisfy the McDonnel Douglas test, a plaintiff must first establish a prima facie case of discrimination. To do that, she must "demonstrate that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated." *Rutherford v. Harris County*, 197 F.3d 173, 185 (5th Cir. 1999). The burden then shifts to defendant to articulate a legitimate, nondiscriminatory

reason for the employment action. *McDonnell Douglas*, 411 U.S. at 802; *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998), *cert. denied*, 525 U.S. 1000 (1998).

In the instant case, Plaintiff fails to present a prima facie case of sex discrimination, because she offers no evidence that she was qualified for her position. Defendant's records indicate that Plaintiff had a failing job performance beginning in November 2003, and Plaintiff herself admits that she had received poor ratings from supervisors at different times throughout her career. (Doc. No. 8, Ex. 38, at 91: 8-15.) Sue Burton, Plaintiff's OJI, testified at the MSPB hearing that she identified many areas where Plaintiff was struggling in her work, but Plaintiff refused to accept assistance. (Doc. No. 8, Ex. 10.) Plaintiff argues that her job evaluations were conducted using out-dated, subjective standards that unfairly applied to her work. (Doc. No. 8, Ex. 38, at 43-44.)

Plaintiff's employment history, and Sue Burton's testimony, are persuasive evidence that the Plaintiff was not qualified for her position. The standards used to evaluate Plaintiff in her performance appraisals, and the standards presented to her in the Opportunity Letter, make frequent reference to the Internal Revenue Manual ("IRM"). The IRM is the operating manual for revenue officers, and it contains specific guidelines and timeframes for performing certain tasks. It is evident in reviewing Plaintiff's employment record that she did not complete certain tasks in the time required. Plaintiff testified that she did not believe these standards were correct; however, the MSPB determined that the standards are correct and were made available to the Plaintiff on several occasions. (Doc. No. 8, Ex. 10.) Plaintiff offers no evidence to contradict the MSPB's determination.

The Court is hesitant to decide the case on these grounds alone, however, because objective standards can be applied to different employees with varying levels of rigidity. Nevertheless, Plaintiff still fails to demonstrate a prima facie case of sex discrimination because she offers no evidence that similarly situated male employees were treated more favorably. Plaintiff never makes

5

any specific allegation of discrimination on the basis of her sex. Plaintiff does assert that everyone in her revenue officer class received a GS-11 rating before her, but she presumably means that both the males and the females received promotions before her. (Doc. No. 8, Ex. 34, v. 6, tab 4n2-2).

In her affidavit to the Court, Plaintiff states:

> "On December 8, 2004, Karen Ytuarte, another employee in Gibson's group, stated in her EEO Declaration, that in our Survey Feedback Session the group pointed out approximately thirty negative behavioral traits exhibited by Mr. Gibson. She also stated that all but one female revenue officers has had difficulty working with Mr. Gibson. Female revenue officers are reluctant to approach or talk with Mr. Gibson."

(Doc. No. 8, Ex. 22, at 4.) Such allegations, if substantiated, would be prima facie evidence of discrimination. Plaintiff does not present any documents or testimony supporting this statement, however, rendering it naked hearsay. Statements used to refute summary judgment must be admissible at trial. FED R. CIV. P. 56(e)(1); *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008). Significantly, Plaintiff does not allege that she experienced any of this treatment herself; she can only base a claim on discrimination that she experienced personally. *Septimus v. University of Houston*, 399 F.3d 601, 612 (5th Cir. 2005).

Finally, at the Plaintiff's EEO hearing on July 8, 2005, James A. Whaley, the Plaintiff's union steward, testified about the source of the Plaintiff's problems with management:

> "I think partially because she was a woman because of the fact that they didn't do that—they would never have done that to her if she had been a man. They expected the women to be a lot more submissive; and obviously if a man was assertive, they didn't seem to have a problem with a man standing up to them as they did with females."

(Doc. No. 8, Ex. 38, 229: 12-20.) If this statement were corroborated, it would also be prima facie evidence of discrimination. Such unsupported speculation, however, is not competent summary judgment evidence. *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Accordingly, Plaintiff fails to present a prima facie case of sex discrimination.

B.     **Age Discrimination**

6

Plaintiff also alleges that she was discriminated against on the basis of her age. Under the Age Discrimination in Employment Act ("ADEA") "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). "When a plaintiff alleges disparate treatment, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 131 (2000).

To prove age discrimination a "plaintiff must show that '(1) [she] was discharged; (2) [she] was qualified for the position; (3) [she] was within the protected class at the time of discharge; and (4) [she] was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age.'" *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993)).

Once again, because the Plaintiff does not show that she was qualified for her job, she cannot satisfy the required criteria. Additionally, Plaintiff presents no evidence that she was replaced with a younger revenue officer or that younger employees received preferential treatment. Plaintiff does assert that, "on May 23, 2007, Office of Personnel Management sent me an email stating that of the 231 employees removed under Ch. 43 for the year 2005, one hundred and ninety three were over the age of 40." Plaintiff provides no documents to support this evidence, and draws no conclusions demonstrating systematic discrimination. Such a generalized allegation does not establish a prima facie case of age discrimination. *Septimus*, 399 F.3d at 611.

### C. Sexual Harassment and Hostile Work Environment

Plaintiff also alleges she suffered from sexual harassment and a hostile work environment. In order to establish a prima facie case of sexual harassment, Plaintiff must show that "1) she

7

belongs to a protected class; 2) she was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action. *Septimus*, 399 F.3d at 611.

To make a claim for a hostile work environment under Title VII, the alleged harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993).

The Plaintiff describes her working relationship with Gibson:

I was belittled, degraded, demeaned, ridiculed, and subjected to disparaging remarks. I was threatened with low appraisals, shouted at and humiliated, especially in front of other employees. I was taunted and teased with the intention to embarrass and humiliate me. Mr. Gibson deliberately set unrealistic goals and deadlines for me, which were unachievable, and which were changed without notice or reason, or whenever it appeared to him that I was close to achieving them. Other employees were not required to achieve such high standards.

(Doc. No. 22, at 4.) To support her claim, Plaintiff claims that Gibson unfairly took her phone card and her printer after she was removed from the Flexi-place program. (Doc. No. 8, Ex. 38, at 113: 20-21). Later, she alleges that he made an insulting comment to her regarding her level of work experience, and that she once saw him gossiping about her with other employees. (Doc. No. 8, Ex. 38, at 102: 1-5). Finally, Plaintiff claims Sue Burton, her OJI, treated her poorly. (Doc. No. 8, Ex. 38, at 118: 17-20).

Assuming that these allegations are all true, the Plaintiff's perception that they amount to sexual harassment or a hostile work environment is not objectively reasonable. Losing one's computer, or receiving criticism from a superior, is certainly an unpleasant experience for an

8

employee, but it is not the type of action that Title VII was intended to prohibit. As to Plaintiff's allegations that Mr. Gibson insulted her on a few occasions, these isolated events do not reach the level of "harassment" envisioned by Title VII. "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount in discriminatory changes in the 'terms and conditions of unemployment.'" *Clark County School District v. Breeden*, 532 U.S. 268, 271 (2001) (*quoting Faragher v. Boca Ratgon*, 524 U.S. 775, 788 (1998)).

In *Septimus*, the plaintiff alleged that she was subject to a two hour "harangue in her office by her male manager which 'frightened her and made her feel useless and incompetent.'" 399 F.3d at 612. Her manager also questioned her about a presentation in a "mocking tone" and told her that she was "like a needy old girlfriend." *Id*. The Fifth Circuit found this behavior, which is arguably more offensive than that alleged here, was not "harassment" within the context of Title VII. Plaintiff unquestionably experienced great unhappiness at her office; this is not sufficient, however, to establish a prima facie case of sexual harassment and a hostile work environment.

### D. Retaliation

Plaintiff also alleges that she suffered retaliation based on her EEO complaints against Gibson and Arnold. A plaintiff may establish a prima facie case of unlawful retaliation by demonstrating: "1) [she] engaged in protected activity, 2) [she] suffered an adverse employment decision, and 3) a causal link exists between the protected activity and the adverse employment decision." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001). To establish a causal link, an employee "should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003). If a plaintiff makes a prima facie case, the burden shifts to the defendant to offer a legitimate reason for the employment decision. If the defendant makes such a showing, the burden shifts back to the plaintiff to show that the articulated reason was a pretext for retaliation. To demonstrate pretext, a

plaintiff must show that the adverse employment action would not have occurred but for his protected conduct. *See Septimus*, 399 F.3d at 608.

The parties agree that Plaintiff engaged in protected activity and that she suffered an adverse employment decision. The issue is whether there was a "causal link" between her protected activity and the adverse employment action. The "'causal link' required in prong three of the prima facie case for retaliation is not as stringent as the 'but for' standard." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (citing *Long v. Eastfield College*, 88 F.3d 300, 305 (5th Cir. 1996)). Determining the causal link is "highly fact specific," and the court can look at the employee's past disciplinary record, whether the employer followed typically policy and procedure in terminating the employee, and the temporal relationship between the employee's conduct and discharge. *See Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994).

Plaintiff offers no evidence, other than her own assertions, linking her activity and the adverse employment action. We therefore assume that her case is based on the temporal connection between the protected activity and the adverse employment action. The Fifth Circuit has held that a five-month lapse between the protected activity and the alleged retaliatory act, without more, cannot establish a causal link. *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002).

Plaintiff engaged in "protected activity" by filing EEO complaints in July 2004 and again in September 2004. Defendant argues that, since Plaintiff was not terminated until August 25, 2005, there is no temporal connection between her protected activity and the adverse employment action.[2] This argument overlooks the fact that the Opportunity Letter was issued on August 31, 2004, just over a month after the Plaintiff's first EEO complaint. Issuing an Opportunity Letter to the

---

[2] Defendants also assert that Ms. Dolby, the deciding official, was not aware of the plaintiff's protected activity. This fact is not highly prohibitive given that Ms Dolby was simply reviewing the decision of Mr. Arnold, who was the subject of the Plaintiff's EEO activity.

10

Plaintiff, which effectively put her on probation and thus changed the terms of her employment, could be considered an adverse employment action itself. *See Evans*, 246 F.3d at 353, (*quoting Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 761 (1998)). If so, the temporal proximity of those two events becomes much more probative.

We do not have to reach the issue of temporal proximity, however, because Plaintiff's poor performance record is determinative. Before she filed her first EEO complaint, she had already received three failing evaluations from Gibson. Filing an EEO complaint does not allow an employee to escape her own poor performance record. *See Raggs*, 278 F.3d at 471. Title VII does not prevent employers from completing adverse employment actions that are in progress when the EEO complaint is filed. *Clark*, 532 U.S. at 275. Plaintiff has not met the burden of establishing a prima facie case of discrimination.

### III. PLAINTIFF'S NON-DISCRIMINATION CLAIMS

#### A. Standard of Review for Non-Discrimination Claims

In reviewing the Plaintiff's non-discrimination claims, we are limited to the MSPB's record. This Court may set aside the MSPB's decision only if it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 706; *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214 (5th Cir. 1996). Substantial evidence is defined as "more than a scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Girling*, 85 F.3d 211 at 215, (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Court's review is confined to the administrative record, "[j]udicial review has the function of determining whether the administrative action is consistent with the law – that and not more." *Girling*, 85 F.3d 211 at 215.

### B. THE MSPB's Decision Regarding Plaintiff's Termination Is Supported By Substantial Evidence

The MSPB had before it, as the Court now has, a voluminous record describing the Plaintiff's employment history.[3] As has been previously discussed, Plaintiff was warned about the quality of her work, and the possibility of termination, as early as November 2003. She received numerous negative performance reviews following this initial warning, and she admitted herself that she had received failing performance reviews at various times throughout her career.

In addition to Plaintiff's employment record, the MSPB had the benefit of hearing testimony from not only Plaintiff and Gibson, but also Sue Burton, the Plaintiff's OJI. The MSPB found her testimony credible: she testified regarding the Plaintiff's low level of competence and her refusal to receive assistance. (Doc. No. 8, Ex. 10.) The only evidence Plaintiff presented to contradict her record and Ms. Burton's testimony was her own opinion regarding her abilities as a revenue officer. *Id.*

We must give great deference to the MSPB's review of the facts. *Girling*, 85 F.3d 211, at 215. The MSPB's decision affirming Plaintiff's termination is in accordance with the law[4] and supported by substantial evidence.

### C. The MSPB's Decision Regarding Plaintiff's Whistleblower Claim is Supported by Substantial Evidence

Plaintiff also claims that her termination was reprisal resulting from her actions protected under the Whistleblower Protection Act ("WPA"). 5 U.S.C. § 2302(b)(8). Under the WPA,

---

[3] Plaintiff argues that the MSPB record that was delivered to this Court is not complete because there are gaps in the hearing tapes. The Court has reviewed the hearing tapes and found them to be complete.

[4] Plaintiff contends that the MSPB's decision is not in compliance with the law because the MSPB did not review the agency's performance standards. This argument has no merit. The MSPB, in its initial decision, began its discussion by reviewing the agency's standards and noting that they had been approved by Office of Personnel Management in 1986. (Doc. No. 8, Ex. 10.) The MSPB goes on to say that not only were these standards approved, but they were made available to the Plaintiff on several occasions. *Id.*

employers cannot take personnel actions as a result of any disclosure by an employee that the employee reasonably believes evidences a violation of law, rule or regulation, or evidences gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Watson v. Department of Justice*, 64 F.3d 1524, 1527 (Fed. Cir. 1995). To establish a prima facie case under the WPA, a plaintiff must prove by a preponderance of evidence that: (1) she made a protected disclosure; (2) subsequent to the disclosure she was subject to disciplinary action; and (3) the disclosure was a contributing factor to the personnel action taken against her. *Carr v. Social Security Admin.*, 185 F.3d 1318, 1322 (Fed. Cir. 1999). A critical element of the prima facie case is evidence that the accused decision-making official knew of the plaintiff's disclosure. *See, e.g., Stanek v. Department of Transp.*, 805 F.2d 1572, 1580 (Fed. Cir. 1986).

Plaintiff alleges that she engaged in two protected actions protected by the WPA: first, her Congressional testimony in 1998, and second, her TIGTA claim regarding another revenue officer's abuse of travel vouchers. (Doc. No. 8, Ex. 10.) As to the Congressional testimony, Plaintiff admitted that she had never actually testified before Congress and that she had never informed any of her current managers that she had planned to do so. *Id.* The MSPB found credible Gibson, Arnold, and Dolby's testimony confirming that they never knew Plaintiff planned to testify before Congress. This activity, therefore, is not casually connected to Plaintiff's termination.

As to the TIGTA claim, Plaintiff concedes that she never told her managers that she reported her co-worker's abuse of the travel vouchers.[5] *Id.* Once again, the MSPB found credible the managers' testimony that they did not know Plaintiff was the one who filed the TIGTA grievance.

---

[5] In reviewing the record, this Court did find one email in which the Plaintiff informed Gibson that she was meeting with TIGTA on August 3, 2004. (Doc. No. 8, Ex. 34, v. 2, tab 4d_110.) Plaintiff did not tell Gibson what she intended to discuss with TIGTA, however, so it is reasonable to conclude that this email did not put him notice that Plaintiff made the complaint about the travel vouchers. Neither party discusses this email in their filings.

13

Plaintiff has failed to establish a prima facie case that she engaged in protected activity that was casually connected to her termination; her WPA claim is therefore denied.

## V. CONCLUSION

Defendant's Motion for Summary Judgment on Discrimination Claims and Motion for Summary Judgment on Non-Discrimination Claims are **GRANTED**. Defendant moved to dismiss Plaintiff's claims for libel, slander, defamation, and intentional infliction of emotional distress. (Doc. No. 10.) Plaintiff withdrew these claims in her response. (Doc. No. 23.) Defendant's Motion to Dismiss is therefore **DENIED AS MOOT**.

**IT IS SO ORDERED.**
**SIGNED** this 29th day of September, 2008.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT